# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES KRUG, et al., | CIVIL ACTION NO. 3:24-CV-01901 |
| Plaintiffs, | |
| v. | (Magistrate Judge Latella) |
| WILLIAM JENKINS, | |
| Defendant. | |

## MEMORANDUM

This matter comes before the Court on the Motion to Dismiss filed by the Defendant, William Jenkins. For the reasons that follow, the Motion will be **DENIED**.

## I.   Procedural Background

Plaintiffs James Krug, T.K. and Angela Krug initiated this action by filing a Complaint pursuant to 42 U.S.C. § 1983 on November 5, 2024. (Doc. 1). The Complaint alleges that the Defendant, William Jenkins, a Pennsylvania State Trooper, violated Plaintiffs' civil rights by, *inter alia*, falsely arresting Plaintiff James Krug in the presence of his children, subjecting him to excessive force, and inflicting emotional distress on Mr. Krug and his children. The Complaint brings five federal civil rights causes of action and four claims under Pennsylvania state law. On January 6, 2025, the Defendant filed a Motion to Partially Dismiss the Complaint, (Doc. 5), and a supporting brief on January 21, 2025. (Doc. 7).

1

Plaintiffs filed a brief in opposition to the Motion on January 27, 2025. (Doc. 11). Defendant filed a reply brief on February 4, 2025. (Doc. 12). The Motion is ripe for disposition.

## II.    Background

According to the Complaint, on March 28, 2023, Plaintiff James Krug's children, Plaintiffs Angelina Krug and T.K., then students at the Wallenpaupack High School, were wrongly accused of stealing another student's sneakers. (Doc. 1, p. 2). The Defendant, Trooper William Jenkins, went to the school to investigate. (*Id.*). At the same time, Plaintiff James Krug went to the school to address the matter with school staff. (*Id.*). As James Krug was entering the school, Jenkins was leaving. (*Id.*). Jenkins proceeded to Krug's wife's place of business who informed him that she was busy and that he needed to go to the school to speak with James Krug about the matter. (*Id.* at p. 3). The Complaint alleges that Jenkins threatened and/or harassed Krug's wife. (*Id.*). When Jenkins arrived at the school, according to the Complaint, Krug had already resolved the matter, however, he made a complaint about Jenkins's treatment of Krug's wife. (*Id.*). Plaintiffs allege that: "After a brief conversation in which Defendant Jenkins continued to harass Plaintiffs, Defendant Jenkins, without any cause whatsoever, placed Plaintiff James Krug under arrest." (Doc. 1, p. 3, ¶ 23). Plaintiffs allege

2

that despite James Krug informing Jenkins about a preexisting shoulder injury, he forced Krug's arms behind his back causing severe injury resulting in loss of work and the need for surgery. (Doc. 1, p. 3, ¶¶ 25-27). Plaintiffs allege that Jenkins "perp walked" Krug through the school in front of his sobbing children and their friends. (*Id.* at p. 3). They claim that Jenkins caused further injury to James Krug's shoulder during his transportation to the State Police Barracks. (*Id.*). The Complaint states that Jenkins charged James Krug with Harassment, Disorderly Conduct and Defiant Trespass, but that all those charges were dismissed for lack of probable cause. (*Id.*).

### III.    12(b)(6) Standard

Rule 8 of the Federal Rules of Civil Procedure states that a claim must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This requires the Plaintiff to put forth evidence that, "when taken as true, suggest[s] the required elements of a particular legal theory." *McNeilly v. City of Pittsburgh*, 40 F.Supp.3d 643, 650 (W.D. Pa. 2014). The Plaintiff must state "sufficient factual allegations which 'nudge' its claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009)). The purpose is to ensure "fair notice of the factual basis of a claim while raising a

3

'reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* at 651.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  This means that a complaint may be dismissed if it does not present sufficient facts to support a plausible claim: "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

The court must accept both the Plaintiff's allegations and any reasonable inferences that can be drawn as true and construe them in the light most favorable to the non-moving party. *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). However, it need not accept "'unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).  Reciting the elements that make up a cause of action and

supporting them with "mere conclusory statements" is insufficient to give those statements the presumption of truth. *McNeilly*, 40 F.Supp.3d at 650 (citing *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937).

When faced with a motion to dismiss pursuant to 12(b)(6), a court should conduct a two-part analysis: 1) separate the factual and legal elements of a claim; and 2) "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (internal citation removed). The court may consider facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellab, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). This analysis requires the court to look at the claims on a case-by-case basis and rely both "on its judicial experience and common sense." *McNeilly*, 40 F. Supp. 3d at 650. The court will not be reaching legal conclusions, but instead is merely determining "whether the plaintiff should be permitted to offer evidence in support of the allegations." *Id.* (citing *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000)).

IV. **Discussion**

   **1) The Federal Claims**

As noted above, the Complaint raises five federal claims and four based on Pennsylvania state law. The five federal claims are brought under 42 U.S.C. § 1983 and include: 1) False Arrest in violation of the Fourth and Fourteenth Amendments, 2) Malicious Prosecution in violation of the Fourth and Fourteenth Amendments, 3) Unlawful Seizure in violation of the Fourth and Fourteenth Amendments, 4) Excessive Force in violation of the Fourth and Fourteenth Amendments, and 5) Retaliation in violation of the First and Fourteenth Amendments.

Defendant seeks to dismiss Plaintiffs' Fourteenth Amendment false arrest, malicious prosecution, unlawful seizure, excessive force, and retaliation claims pursuant to the explicit source rule. *In Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989), the Supreme Court held that:

> *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

490 U.S. at 395, 109 S.Ct. at 1871 (emphasis in the original). Based on this clear directive from the Supreme Court, Defendant's argument is well taken. However, in their brief in opposition to the Motion to Dismiss, Plaintiffs do not take issue with this analysis but rather clarify that they "invoke the Fourteenth Amendment only insomuch as it incorporates the First and Fourth Amendments to the States, which is permissible." (Doc. 11, pp. 3–4). Plaintiffs explain that the "Complaint sets out no substantive claims under the Fourteenth Amendment." (*Id.* at p. 4). As Judge Saporito stated in *Merriman v. Oswald*, No. 3:20-cv-00617, 2021 WL 1060237, (M.D. Pa. Mar. 18, 2021):

> the plaintiff here does not assert either procedural or substantive due process claims. He has explicitly brought these claims under the Fourth Amendment, referencing the Fourteenth Amendment only to recognize that the Fourth Amendment—which applies on its face to the federal government only—was incorporated against the states later by operation of the Fourteenth Amendment's due process clause. See *Williams v. Papi*, 30 F. Supp. 3d 306, 311–12 (M.D. Pa. 2014). This is the "incorporation doctrine," and its invocation is entirely appropriate in this context. *See id.* Thus, the defendant's argument is not well taken.

*Id.* at *3. Because Plaintiffs are not asserting an independent claim under the Fourteenth Amendment but rather only referencing the fact that the Fourth and First Amendments are made applicable to the states by operation of the Fourteenth

Amendment, the Motion to Dismiss as to the Fourteenth Amendment claims will be denied.

### 2) Claims Under Pennsylvania State Law

The Complaint also seek to bring four supplemental claims under Pennsylvania law, *viz.*, claims for malicious prosecution, assault, battery, and intentional infliction of emotional distress. Defendant seeks to dismiss Plaintiffs' supplemental state law claims based on sovereign immunity.

The Constitution of the Commonwealth of Pennsylvania provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 1. In accordance with the constitutional provision, the Pennsylvania legislature has declared:

> Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62

8

> (relating to procurement) unless otherwise specifically authorized by statute.

1 Pa. Stat. and Cons. Stat. Ann. § 2310 (West).  The Pennsylvania legislature has specifically waived sovereign immunity in limited circumstances set forth in 42 Pa. C.S.A. § 8522 which states:

> (a) Liability imposed.--The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa. C.S.A. § 8522 (a).  Those acts for which a Commonwealth party may be liable only include claims for damages caused by: (1) Vehicle liability, (2) Medical-professional liability, (3) Care, custody or control of personal property, (4) Commonwealth real estate, highways and sidewalks, (5) Potholes and other dangerous conditions against the dangerous condition, (6) Care, custody or control of animals, (7) Liquor store sales, (8) National Guard activities, (9) Toxoids and vaccines, (10) Sexual abuse. 42 Pa. C.S.A. § 8522(b).  *See Curry v. Poray*, No. 3:24-cv-1026, 2025 WL 1680012, at *7 (M.D. Pa. June 13, 2025) ("As for the state law claims, the Pennsylvania General Assembly has declared that state employees

acting within the scope of their duties are entitled to sovereign immunity except where immunity has specifically been waived . . . Generally, sovereign immunity is only waived for state law negligence claims arising under facts confined to ten specific, defined categories."); *Boucher v. Lupacchini*, No. 3:19-CV-2106, 2021 WL 11096471, at *9 (M.D. Pa. Mar. 1, 2021), *report and recommendation adopted*, 2022 WL 19795967 (M.D. Pa. Apr. 14, 2022) ("Under Pennsylvania law, the Commonwealth, its agencies and employees enjoy broad immunity from most state-law tort claims.")

"However, state employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment." *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Commw. Ct. 2013). Here, the parties dispute whether the Complaint sufficiently alleges that Defendant Jenkins was acting within the scope of his employment as a Pennsylvania State Police Trooper when the events giving rise to this action occurred. To determine whether Trooper Jenkins was acting within the scope of his employment when he arrested James Krug, both parties cite to the Pennsylvania Supreme Court's decision in *Justice v. Lombardo*, 652 Pa. 588 (2019). In *Justice*, the plaintiff, Ms. Justice, was a motorist stopped by the defendant, a Pennsylvania State Trooper, for a broken taillight and driving with a suspended license. *Id.* at 594. Ms. Justice testified that while waiting for a tow

10

truck, the Trooper "jumped [her], wrestled [her], twisted [her] arm behind [her] back, was trying to push [her] down to the ground." *Id.* at 596. Ms. Justice alleged that the Trooper was "forceful" and twisted her arm "way up [her] back." She was handcuffed, although never arrested. *Id.* Ms. Justice later brought suit in Philadelphia County based on state law claims for assault, battery, invasion of privacy, intentional infliction of emotional distress and false imprisonment/arrest. *Id.* at 593. The issue in *Justice* was whether the Trooper was acting within the scope of his employment when the events happened; the jury found that he was not and therefore not entitled to immunity under Pennsylvania law. 652 Pa. at 601–02. The Commonwealth Court reversed, finding that the Trooper's action following a traffic stop were within the scope of his employment. *Id.* at 602. The Supreme Court of Pennsylvania reversed holding that the issue of whether the Trooper acted within the scope of his employment was a question for the jury.

The *Justice* Court began its analysis by recognizing that "[i]n the present case, it is undisputed that Trooper Lombardo, as an employee of the PSP, is entitled to the protections of sovereign immunity for conduct within the scope of his duties, subject only to certain exceptions not applicable here. Thus, judgment could only be entered against Trooper Lombardo in this matter if he was acting outside the scope of employment on November 27, 2013 when he initiated a physical

11

encounter with Ms. Justice and forcibly handcuffed her." *Id.* at 604 (cleaned up). In determining whether a particular action falls within the scope of employment, the Court looked to Restatement (Second) of Agency § 228.[1] *Id*. at 604. That analysis, however, is usually one for the jury. The Court explained:

> We have long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury. We have explained that the only exception to this well-established rule is where neither the facts nor the inferences to be drawn from them are in dispute. In such a case, the court may decide the scope of employment question as a matter of law. However, where more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury.

*Id.* at 607 (cleaned up). While the defendant in *Justice* acted within the scope of his employment as a State Trooper by pulling over Ms. Justice, issuing tickets and calling a tow truck, it was for the jury to decide whether the force that he used was

---

[1] Restatement (Second) of Agency § 228 (1958), provides:
(1) Conduct of a servant is within the scope of employment if, but only if:
(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits;
(c) it is actuated, at least in part, by a purpose to serve the master, and
(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

within the scope of his employment. The Court stated that: "it is simply not the law that an employee's use of force is within the scope of employment regardless of whether the force is reasonable or carried out for an improper motive." 652 Pa. at 610.

"The inquiry about whether conduct was within the scope of the actor's employment is 'fact-intensive.'" *Korman v. Pennsylvania State Police Honsedale Barracks*, No. 3:21-CV-01516, 2023 WL 2224437, at *16 (M.D. Pa. Feb. 24, 2023). "Given the fact-intensive nature of the analysis of whether conduct was within the scope of the actor's employment, sovereign immunity is not warranted in every circumstance for PSP troopers and officers." *Id.* That these cases turn on their facts is highlighted by the parties citing to two cases from this Court that conducted the analysis mandated in *Justice* and reached different results. Defendant points to *Brown v. Adams Cnty.*, No. 1:23-CV-01886, 2025 WL 285329 (M.D. Pa. Jan. 23, 2025) where the Court granted Defendant's motion to dismiss because Plaintiff's "amended complaint explicitly alleges that the Troopers were acting in the scope of their employment while engaged in tortious conduct . . . [and] none of the allegations concerning negligent conduct fall within one of the ten exceptions to statutory sovereign immunity." *Id.* at * 9. Plaintiffs, in contrast, cite to *Mazzella v. Patrone*, No. 3:22cv1872, 2024 WL 3927258 (M.D. Pa. Aug.

13

23, 2024) where the Court denied Defendant's motion to dismiss stating: "plaintiff advises that he advances the state law claims for assault and battery in the alternative based on the critical question of whether Defendant [Trooper] Patrone acted within the course and scope of his employment. Pursuant to the Federal Rules of Civil Procedure, such alternative claims are permitted, FED R. CIV. P. 8(d)(2), and thus the motion to dismiss will be denied." *Id.* at *6

At this stage of the litigation, it is difficult to say whether the issue of Jenkins's scope of employment is ultimately a jury question or not, however, it is sufficient to say the Plaintiffs should be permitted to engage in discovery on the matter. Similarly, Defendant will be able to further develop the record to factually support the arguments in his brief regarding the background of his presence at the school and the reasons for his actions. Accordingly, at the appropriate time, Defendant "remain[s] free to move for summary judgment with respect to this issue if discovery reveals that [he] acted pursuant to [his] employment responsibilities rather than pursuant to personal motives unrelated to law enforcement." *Swaney v. Jordan*, No. 10-521, 2011 WL 1485969, at *7 (W.D. Pa. Apr. 19, 2011) (citing *Strothers v. Nassan*, No. 08-1624, 2009 WL 976604, at *4 (W.D. Pa. Apr. 9, 2009)).

Accordingly, the Motion to Dismiss will be denied. An Order consistent with this Memorandum follows.

Dated: September 24, 2025            **/s/ Leo A. Latella**
                                                    Leo A. Latella
                                                    United States Magistrate Judge